## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| **ANTHONY P. ORNDER,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 18-CV-0342-GKF-JFJ** |
| | ) | |
| **DANIEL ELKINS,** | ) | |
| **ETHAN LONG, and** | ) | |
| **CORY BOYD,**[1] | ) | |
| | ) | |
| **Defendants.** | ) | |

### OPINION AND ORDER

Plaintiff Anthony Ornder, a state inmate appearing pro se,[2] brings this civil rights action under 42 U.S.C. § 1983 against defendants Daniel Elkins, Cory Boyd and Ethan Long.  Ornder claims defendants—all of whom were police officers employed by the City of Bartlesville at the time relevant to this action—violated his Fourth Amendment right to be free from unreasonable seizures by using excessive force against him when they arrested him on August 23, 2016.  Ornder also asserts a claim for "theft," alleging defendants stole from him $4,850 in cash and two casino vouchers he had with him at the time of his arrest.  Defendants move for summary judgment on the excessive-force claim, asserting they have qualified immunity, and move to dismiss the "theft" claim, asserting Ornder fails to state a cognizable claim for relief under § 1983.  The Court has considered the amended complaint (Dkt. 44), the summary judgment motion (Dkt. 65), Ornder's

---

[1] In some parts of the record, Officer Cory Boyd is referred to as Corey Boyd.  *See, e.g.* (Dkt. 65-3, p.5).  Because it is not clear from defendants' pleadings which spelling is correct, the Court will use the spelling "Cory" as provided in Boyd's answer to the amended complaint (Dkt. 47).

[2] Because Ornder appears pro se, the Court liberally construes his filings.  *Hall v. Witteman*, 584 F.3d 859, 863 (10th Cir. 2009)

response (Dkts. 66, 73), defendants' reply (Dkt. 67) and applicable law.[3]  For the reasons that follow, the Court finds defendants are not entitled to qualified immunity on the excessive-force claim and that there are genuine factual disputes that preclude summary judgment as to that claim. The Court further finds that the allegations in count three of the amended complaint fail to state a plausible claim for relief under § 1983.  The Court therefore grants, in part, and denies, in part, defendants' motion.

## BACKGROUND

Officer Cory Boyd began working for the Bartlesville Police Department in early July 2016, after serving as a police officer in Ada, Oklahoma for two years.  [Dkt. 65-3, Boyd Aff., ¶¶ 3-4.]  During Boyd's first week in Bartlesville, he shadowed Detective Anthony Lein as Lein investigated a kidnapping.  [*Id.* ¶ 5.]  When Lein and Boyd spoke with the alleged kidnapping victim,  Boyd learned that Anthony Ornder was a suspect in the kidnapping.  [*Id.*]

---

[3] Defendants argue that Ornder's response does not comply with Rule 56 and LCvR 56 and that he failed to come forward "with any credible evidence" demonstrating a genuine issue of material fact; rather, they suggest, he responded to their motion for summary judgment only with allegations and denials. Dkt. 67, Reply, at 1.  They specifically contend he "has not provided any testimonial or physical evidence to support his contention that an underlying constitutional violation was caused by [d]efendants" because his "version of the facts is conclusory and self-serving and contains numerous factual inaccuracies and inconsistencies that are unequivocally refuted by the sworn testimony of [d]efendants" and that Ornder's "only evidentiary support is the response itself."  *Id.* at 2, 5.  It is true that a nonmovant cannot rely on unsupported and conclusory allegations to defeat a motion for summary judgment. *Conaway v. Smith*, 853 F.2d 789, 792 (10th Cir. 1988).  But a court ruling on a summary judgment motion may consider a nonmovant's affidavits and declarations as evidence. Fed. R. Civ. P. 56(c)(4).  And a court may treat a verified complaint as an affidavit if it conforms to the standards set out in Rule 56(c)(4), *Conaway*, 853 F.2d at 792, and may consider statements from an unsworn declaration if it is signed under penalty of perjury as required by 28 U.S.C. § 1746.  For purposes of summary judgment, the Court will treat Ornder's verified complaint as an affidavit and his unsworn response, which is signed under penalty of perjury, as a declaration.  And, with the benefit of liberal construction afforded to pro se pleadings, the Court finds Ornder's pleadings substantially comply with Rule 56 and LCvR 56. Consequently, the Court rejects defendants' arguments.

On July 19, 2016, Washington County District Judge Curtis DeLapp issued a felony warrant for Ornder's arrest on charges filed against him in the District Court of Washington County, Case No. CF-2016-299, for kidnapping, three counts of possessing a firearm after former felony conviction or during probation, felony drug possession, and misdemeanor drug possession. [Dkt. 65-6, at 2-3.]  Near the end of July, Officer Boyd and his field training officer, Daniel Elkins, attended a pre-shift squad meeting, learned that a felony warrant had been issued for Ornder's arrest, and viewed a photograph of Ornder that was circulated among the officers at the meeting. [Dkt. 65-2, Elkins Aff., at 2 ¶ 5; Dkt. 65-3, Boyd Aff., at 3 ¶¶ 6-7.]

At approximately 1:30 a.m. on August 23, 2016, Boyd and Elkins were traveling together in a patrol car when Boyd initiated a traffic stop of vehicle pulling a trailer after both officers observed that the trailer had malfunctioning brake lights and running lights.  [Dkt. 65-2, Elkins Aff., at 2-3 ¶¶ 6-7; Dkt. 65-3, Boyd Aff., at 3 ¶¶ 7-9; Dkt. 65-5, at 4 (Elkins Narrative), 10 (Boyd Narrative).][4]  After the driver pulled the vehicle into a parking lot near 200 N. Washington Boulevard, Boyd made contact with the driver, Donald Driskel, and Elkins made contact with the passenger, whom he later recognized as Ornder.  [Dkt. 44, Am. Compl., at 3; Dkt. 65-2, Elkins Aff., at 3 ¶¶ 8-9; Dkt. 65-3, Boyd Aff., at 3 ¶¶ 9-10.]

Boyd directed Driskel to stand near the officers' patrol car.  [Dkt. 65-3, Boyd Aff., at 3 ¶ 11.]  Boyd asked Driskel about his travel plans and the items that were loaded in the trailer and asked "how he knew his passenger."  [*Id.* ¶¶ 11-12.]  Driskel stated he met the passenger "a few days ago," they lived in the same apartment complex and he knew him as "Eric."  [Dkt. 65-5, at

---

[4] Defendants' Exhibit 5 (Dkt. 65-5) includes documents from the Bartlesville Police Department related to the traffic stop and Ornder's arrest.  Each defendant states in his sworn affidavit that the statements in his "Incident Narrative" (i.e., arrest report) are true and correct. Dkt. 65-2, Elkins Aff., at 5 ¶ 30; Dkt. 65-3, Boyd Aff., at 5 ¶ 28; Dkt. 65-4, Long Aff., at 3 ¶ 14.

10 (Boyd Narrative).]  Meanwhile, Elkins asked Ornder for identification.  [Dkt. 44, Am. Compl.,

at 3; Dkt. 65-5, at 4 (Elkins Narrative).]  Ornder falsely identified himself as Eric P. Everley, gave

two different dates of birth, and failed to produce a driver's license or any other form of

identification.  [Dkt. 65-5, at 4-5 (Elkins Narrative); Dkt. 65-9, at 109-13.][5]  According to Ornder,

after Elkins spoke with Boyd, Elkins returned to the vehicle, accused Ornder of lying about his

identity and "got mad" when Ornder handed him "a card to call for attorney assistance."  [Dkt. 44,

Am. Compl., at 3.]

At some point during his contact with Ornder, Elkins recognized him as the Anthony

Ornder with an outstanding felony arrest warrant and ordered Ornder to get out of the vehicle.

[Dkt. 65-2, Elkins Aff., at 3 ¶ 10.]  When Ornder did not comply, Elkins opened the passenger

door to pull him out.  [*Id.*]  Upon opening the door, Elkins saw a handgun lying on the passenger-

side floorboard, within Ornder's reach, and Boyd heard Elkins announce the presence of a gun.

[*Id.*; Dkt. 65-3, Boyd Aff., at 3 ¶ 14.]  Believing Ornder was an immediate threat, Elkins drew his

gun and told Boyd to detain Driskel.  [Dkt. 65-2, Elkins Aff., at 3 ¶ 11.]  Boyd handcuffed Driskel,

sat him on the ground and ran to assist Elkins.  [Dkt. 65-3, Boyd Aff., at 3, ¶¶ 13-14.]

Based on their training, Elkins and Boyd both feared Ornder might have a second weapon

or that he might attempt to retrieve the gun from the floorboard.  [Dkt. 65-2, Elkins Aff., at 3 ¶¶

15-17; Dkt. 65-3, Boyd Aff., at 4 ¶¶ 16-17.]  Either Elkins alone or Elkins and Boyd "pulled"

Ornder from the vehicle and "put him up against the vehicle."  [Dkt. 65-2, Elkins Aff., at  ¶ 12;

Dkt. 65-3, Boyd Aff., at 4 ¶ 15.]  According to Ornder, Elkins "yank[ed]" open the passenger door

---

[5] Defendant's Exhibit 9 (Dkt. 65-9) is the judgment roll from Washington County District
Court Case No. CF-2016-346.  In that case, a jury convicted Ornder of three charges stemming
from his August 23, 2016 arrest, including one count of falsely impersonating another to create
liability.  Dkt. 65-9, at 109.

and "violently pulled" Ornder from the vehicle.  [Dkt. 44, Am. Compl. at 3; Dkt. 66, Resp., at 2.]

According to Elkins and Boyd, Ornder "resisted and pulled away" as they tried to handcuff him.

[Dkt. 65-2, Elkins Aff., at 3 ¶ 13; Dkt. 65-3, Boyd Aff., at 4 ¶ 15.]

Elkins "clock[ed]" Ornder and "knock[ed] him to the ground."  [Dkt. 44, Am. Compl., at

3.]  Both Elkins and Boyd "got on top of" Ornder.  [Dkt. 65-2, Elkins Aff., at 4 ¶ 18; Dkt. 65-3,

Boyd Aff., at 4 ¶ 18.]  As both officers were "straddling" Ornder, Boyd used his baton to strike

Ornder's lower legs and feet so that he would submit to arrest.  [Dkt. 44, Am. Compl., at 3; Dkt.

65-3, Boyd Aff., at 4 ¶ 19.]  Elkins struck Ornder "two to three times in the face with a closed fist"

to force compliance.  [Dkt. 65-2, Elkins Aff., at 4 ¶ 20; Dkt. 65-3, Boyd Aff., at 4, ¶ 20; Dkt. 44,

Am. Compl., at 3.]  Elkins described these as "distraction blows" that were "designed" to keep

Ornder from reaching for a second weapon that Elkins "thought he likely possessed."  [Dkt. 65-2,

Elkins Aff., at 4 ¶ 20.]  According to Elkins and Boyd, sometime after Elkins landed the

"distraction blows," Elkins rolled Ornder onto his stomach, and Ornder "eventually gave up."  [*Id.*

at 4, ¶ 21.]  Both officers "stayed on top of him until he quit resisting" and they were able to

handcuff him.  [Dkt. 65-2, Elkins Aff. at 4 ¶¶ 20-21; Dkt. 65-3, Boyd Aff., at 4, ¶ 21.]

Officer Ethan Long arrived as Elkins and Boyd were trying to handcuff Ornder.  [Dkt. 65-

4, Long Aff., at 2 ¶ 5.]  Long "pinn[ed]" Ornder to the ground "with his knee in the center of

[Ornder's] back" while the other two officers secured both of Ornder's hands.  [*Id.*; Dkt. 44, Am

Compl., at 3.]  According to Long, he removed his knee from Ornder's shoulder after the handcuffs

were secure.  [Dkt. 65-4, Long Aff., at 2 ¶ 5.]  As Elkins and Boyd applied the second handcuff,

they found a folded straight razor in Ornder's right hand.  [Dkt. 65-2, Elkins Aff., at 4 ¶ 22; Dkt.

65-3, Boyd Aff., at 4, ¶ 22.]

According to Ornder, while he "was face down" on the ground and after he was "handcuffed," one or more of the defendants continued to "stomp[]" him and hit him in the back of his head, "without provocation," and Long continued "pinning [Ornder] with his knee in the center of [Ornder's] back."  [Dkt. 44, Am. Compl., at 3; Dkt. 66, Resp., at 2, 5.]  After the assault, Elkins, Boyd and Long took a money bag containing $4,850 and two casino vouchers from Ornder's pocket "by means of theft."  [Dkt. 44, Am. Compl., at 4; Dkt. 66, Resp., at 5.]

While Ornder was still on the ground, Boyd and a Washington County Sheriff's deputy patted Ornder down but found no weapons.  [Dkt. 65-5, at 10 (Boyd Narrative).]  Sometime after the officers secured Ornder, someone called for an ambulance because he appeared to have trouble breathing.  [Dkt. 65-2, Elkins Aff., at 5 ¶ 28; Dkt. 65-4, Long Aff., at 3 ¶ 9.]  Emergency medical technicians assessed Ornder and transported him by ambulance to the hospital for further evaluation.  [Dkt. 65-4, Long Aff., at 3 ¶ 9.]

Before Ornder was transported to the hospital, Long "made a quick search of the passenger seat and floorboard and found a realistic-looking black BB gun which looked like a semi-automatic pistol."  [Dkt. 65-4, Long Aff., at 2 ¶ 6.]  Underneath the seat, he found a loaded .22 caliber revolver.  [Id.]  Long also found a wallet containing Ornder's identification.  [Id. at 2 ¶ 7.]

Long followed the ambulance to the hospital and maintained custody of Ornder at the hospital.  [Dkt. 65-4, Long Aff., at 3 ¶ 10; Dkt. 65-5, at 12 (Long Narrative).]  Long was in the emergency room with Ornder when an emergency medical technician discovered a loaded 9 mm derringer in Ornder's back pocket.  [Dkt. 65-4, Long Aff., at 3 ¶ 11.]  Long took custody of the gun and later turned it over to Sergeant Thomas.  [Id.; Dkt. 65-5, at 12 (Long Narrative).]  When Ornder was released from the hospital, Long transported him to the Washington County Jail.  [Dkt. 65-4, Long Aff., at 3 ¶ 12.]

Boyd booked Ornder into the Washington County Jail on suspicion of possessing a firearm, after former conviction of a felony, resisting arrest, obstructing justice and falsely impersonating another.  [Dkt. 65-3, Boyd Aff., at 5 ¶ 26.]   During the booking process, Boyd photographed "scrapes and abrasions" Ornder sustained during his arrest.  [*Id.* at 5 ¶ 27.]  Ornder suffered injuries on the right side of his face, primarily above his right eye, and on the left side of his face between his nose and his upper lip.  [Dkt. 44, Am. Compl., at 9-11.]  According to Ornder, his "physical injuries resulted in mental and emotional trauma."  [Dkt. 66, Resp., at 2.]

*DISCUSSION*

## I.   Legal standards

### A.   Summary judgment

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  A dispute is "genuine" when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party," and a fact is material when it "might affect the outcome of the suit under the governing [substantive] law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  At the summary-judgment stage, the court's task "is not 'to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial.'"  *Tolan v. Cotton*, 572 U.S. 650, 656 (2014) (quoting *Anderson*, 477 U.S. at 249).  In applying the summary-judgment standard, the court "view[s] the evidence and the reasonable inferences to be drawn from the evidence in the light most favorable to the nonmoving party."  *Hiatt v. Colo. Seminary*, 858 F.3d 1307, 1315 (10th Cir. 2017) (quoting *Twigg v. Hawker Beechcraft Corp.*, 659 F.3d 987, 997 (10th Cir. 2011)).  "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no

'genuine issue for trial.'" *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 288 (1968)). Consistent with the plain language of Rule 56(a), the movant bears the ultimate burden to show there are no genuine issues for the jury to resolve and that the movant is entitled to judgment as a matter of law. *Thomson v. Salt Lake Cty.*, 584 F.3d 1304, 1326 (10th Cir. 2009) (Holmes, J. concurring).

> **B.**     **Qualified immunity standards**

"[P]ublic officials enjoy qualified immunity in civil actions that are brought against them in their individual capacities and that arise out of the performance of their duties." *Pahls v. Thomas*, 718 F.3d 1210, 1227 (10th Cir. 2013).  But they are entitled to qualified immunity only "if their conduct does not violate clearly established statutory or constitutional rights." *Mayfield v. Bethards*, 826 F.3d 1252, 1255 (10th Cir. 2016).  When a defendant moves for summary judgment on the basis of qualified immunity, a court must "engage in a two-pronged inquiry." *Tolan*, 572 U.S. at 655.  The court determines (1) whether the facts, viewed in plaintiff's favor, establish a violation of a federal right and (2) "whether the right in question was 'clearly established' at the time of the violation." *Id.* at 656 (quoting *Hope v. Pelzer*, 536 U.S. 730, 739 2002)).  The court has discretion to determine "which of the two prongs of the qualified immunity analysis should be addressed first," *Pearson v. Callahan*, 555 U.S. 223, 236 (2009), "and may resolve the question by finding either requirement is not met," *Mascorro v. Billings*, 656 F.3d 1198, 1204 (10th Cir. 2011).

In determining whether a plaintiff has shown a violation of a federal right, the court ordinarily must adopt the plaintiff's version of the facts. *Thomson*, 584 F.3d at 1325 (Holmes, J., concurring); *see also Whittier v. Kobayashi*, 581 F.3d 1304, 1307 (11th Cir. 2009) ("We resolve

all issues of material fact in favor of the plaintiff, and then, under that version of the facts,
determine the legal question of whether the defendant is entitled to qualified immunity.").  But
when a defendant asserts qualified immunity at the summary-judgment stage, the "plaintiff's
version of the facts must find support in the record." *Thomson*, 584 F.3d at 1325 (Holmes, J.,
concurring).  Thus, a court is not required to adopt a plaintiff's version of the facts if that version
lacks record support, *id.*, or is "blatantly contradicted" by the record, *Scott v. Harris*, 550 U.S. 372,
380 (2007).

If the plaintiff's version of the facts shows a violation of a federal right, the court must then
determine whether the right violated was clearly established.  "The 'dispositive inquiry in
determining whether a right is clearly established is whether it would be clear to a reasonable
officer that his conduct was unlawful in the situation he confronted.'" *Hernandez v. Mesa*, 137 S.
Ct. 2003, 2007 (2017) (per curiam) (quoting *Saucier v. Katz*, 533 U.S. 194, 202 (2001)).  "It is
clearly established that specific conduct violates a constitutional right when Tenth Circuit or
Supreme Court precedent would make it clear to every reasonable officer that such conduct is
prohibited." *Perea v. Baca*, 817 F.3d 1198, 1204 (10th Cir. 2016).  There need not be "a case
directly on point for a right to be clearly established." *Kisela v. Hughes*, 138 S. Ct. 1148, 1152
(2018) (per curiam) (quoting *White v. Pauly*, 137 S. Ct. 548, 551 (2017) (per curiam)).  But
"existing precedent must have placed the statutory or constitutional question beyond debate."
*Kisela*, 138 S. Ct. at 1152 (quoting *White*, 137 S. Ct. at 551).

In addition, courts should not "define clearly established law at a high level of generality."
*Id.* (quoting *City & Cty. of San Francisco v. Sheehan*, 575 U.S. 600, ___, 135 S. Ct. 1765, 1776
(2015)).  "[S]pecificity is especially important in the Fourth Amendment context, where the
[Supreme] Court has recognized that '[i]t is sometimes difficult for an officer to determine how

the relevant legal doctrine, here excessive force, will apply to the factual situation the officer confronts.'" *Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015) (quoting *Saucier*, 533 U.S. at 205); *see also Kisela*, 138 S. Ct. at 1153 (noting that the "[u]se of excessive force is an area of the law 'in which the result depends very much on the facts of each case,' and thus police officers are entitled to qualified immunity unless existing precedent 'squarely governs' the specific facts at issue" (quoting *Mullenix*, 136 S. Ct. at 309)); *Aldaba v. Pickens*, 844 F.3d 870, 876 (10th Cir. 2016) (applying *Mullenix* and noting that courts may not "rely[] on excessive-force cases markedly different from" the case at hand to conclude that the law is clearly established).

If the plaintiff makes both showings under the qualified-immunity analysis, the court must then consider "the *true* factual landscape—as opposed to the factual landscape as plaintiff would have it," to determine "whether [the] defendant can carry the traditional summary judgment burden of establishing that there are no genuine issues of material fact for jury resolution and that defendant is entitled to judgment as a matter of law." *Thomson*, 584 F.3d at 1326 (Holmes, J., concurring) (emphasis in original).

## II.   Analysis

### A.   Excessive-force claim

Ornder claims defendants violated his rights under the Fourth Amendment by using excessive force to effect his arrest.  Dkt. 44, Am. Compl., at 3.  Defendants contend they are entitled to summary judgment on the basis of qualified immunity because the undisputed facts establish that they did not use excessive force and, even if they did, no clearly established law gave

them fair notice that their conduct would violate Ornder's clearly established rights.  Dkt. 65, Mot. for Summ. J., at 16-20, 24-26.[6]

As just discussed, to overcome defendants' assertion of qualified immunity, Ornder must show (1) defendants' use of force violated the Fourth Amendment and (2) defendants had fair notice from then-existing clearly established law that their particular conduct would violate the Fourth Amendment.  *Mascorro*, 656 F.3d at 1204, 1208.  Contrary to defendants' arguments, Ornder makes both showings.

### 1.      Fourth Amendment violation

The Fourth Amendment prohibits "unreasonable" seizures.  U.S. Const. amend. IV; *Graham v. Connor*, 490 U.S. 386, 394 (1989).  It does not, however, prohibit law enforcement officers from "us[ing] some degree of physical coercion or threat thereof to effect" an arrest or investigatory detention.  *Graham*, 490 U.S. at 396.  In determining whether a particular use of force is unreasonable, "courts must balance 'the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake.'"  *McCoy v. Meyers*, 887 F.3d 1034, 1045 (10th Cir. 2018) (quoting *Graham*, 490 U.S. at 396).  And, in balancing these interests, courts should pay "careful attention to the facts and circumstances of [the] case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether [the suspect] is actively resisting arrest or attempting to evade arrest by flight."  *Graham*, 490 U.S. at 396.

---

[6] Defendants also move for summary judgment on the basis of qualified immunity as to Ornder's claim that defendants violated his Fourteenth Amendment right to due process by acting with deliberate indifference to his need for medical care.  Dkt. 65, Mot. for Summ. J., at 16, 21-24.  Because the Court dismissed Ornder's Fourteenth Amendment claim in a prior order, *see* Dkt. 48, at 5-6, the Court denies as moot defendants' request for summary judgment as to the Fourteenth Amendment claim.

"[T]he 'reasonableness' inquiry in an excessive force case is an objective one:  the question is whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to [the officers'] underlying intent or motivation."  *Graham*, 490 U.S. at 397.  The court must "evaluate the reasonableness of the . . . seizure[] based on the facts known to officers when the event in question occurred."  *United States v. Harris*, 735 F.3d 1187, 1191 (10th Cir. 2013); *see also Hernandez*, 137 S. Ct. at 2007 ("Facts an officer learns after the incident ends—whether those facts would support granting immunity or denying it—are not relevant.").  And "[t]he calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation."  *Graham*, 490 U.S. at 396-97.

Adopting Ornder's version of the facts, to the extent those facts find support in the record, the Court finds them sufficient to demonstrate that defendants used more force than reasonably necessary to effect Ornder's arrest.  The undisputed facts in the record, and the disputed facts the Court must resolve in Ornder's favor, show that Ornder had an outstanding arrest warrant for multiple felonies, including kidnapping and felonious possession of firearms.  Both Elkins and Boyd had prior knowledge of the felony arrest warrant.  After Ornder failed to produce identification and provided a false name, Elkins called Ornder "a liar," recognized Ornder as a "wanted fugitive" and ordered him to get out of the vehicle.  [Dkt. 44, Am. Compl., at 3.]  When Ornder did not comply, Elkins "yank[ed]" opened the passenger-side door and saw what appeared to be a black pistol on the floorboard, within Ornder's reach.  [*Id.*]  Elkins announced he had seen a gun and called for Boyd's help.

Elkins then "pulled [Ornder] from [the] vehicle, clock[ed] [him], knock[ed] him to the ground, straddl[ed] [him, and] hit[] him in [the] face."  [Dkt. 44, Am. Compl., at 3.]  Elkins punched Ornder in the face more than once as he sat on top of him.  At some point, Ornder "was flipped over" onto his stomach and Boyd got on top of Ornder and began striking Ornder's legs and feet with a baton.  [*Id.*]  When Long arrived at the traffic stop, Elkins and Boyd had not yet secured both of Ornder's hands in handcuffs.  Long "pinn[ed]" Ornder to the ground by placing his knee on Ornder's back while Elkins and Boyd remained on top of Ornder.  [*Id.*]  Ornder "eventually gave up," and Elkins and Boyd were able to secure both of his hands in handcuffs. [Dkt. 65-2, Elkins Aff., at 4.]  When they applied the second cuff, they found a folded straight razor in Ornder's hand.  After Ornder was handcuffed and while he remained face down on the ground with Long's knee in his back, defendants "continued to beat [him] in the back of his head," "stomp[]" him, and "hit [him] with [a] baton," all "without provocation."  [Dkt. 66, Resp., at 2, 5.]

Even under Ornder's version of the facts, the Court finds that the initial actions taken by Elkins and Boyd to effect Ornder's arrest were objectively reasonable.  It is undisputed that Ornder had an outstanding felony arrest warrant, Elkins and Boyd both had prior knowledge of that warrant, Ornder lied to Elkins about his identity before Elkins recognized Ornder as the subject of the felony arrest warrant, and Ornder failed to comply with Elkins' orders to produce a valid identification and get out of the vehicle.  When Elkins opened the door to remove Ornder from the vehicle he saw a gun on the floorboard, within Ornder's reach.  Elkins reacted as any reasonable officer in his position would have reacted to the perceived immediate threat of an armed suspected felon:  Elkins announced the presence of a gun, called on Boyd for assistance, forcefully removed Ornder from the vehicle—and away from the gun—and attempted to handcuff him.  *See Thomas v. Durastanti*, 607 F.3d 655, 668 (10th Cir. 2010) (stating, "[I]t is clear that '[a] law enforcement

agent, faced with the possibility of danger, has a right to take reasonable steps to protect himself . . . regardless of whether probable cause to arrest exists." (quoting *United States v. Merkley*, 988 F.2d 1062, 1064 (10th Cir.1993))); *Jiron v. City of Lakewood*, 392 F.3d 410, 415 (10th Cir. 2004) (reiterating that even "deadly force [is] justified under the Fourth Amendment if a reasonable officer in Defendants' position would have had probable cause to believe that there was a threat of serious physical harm to themselves or others" (alteration in original) (quoting *Sevier v. City of Lawrence*, 60 F.3d 695, 699 (10th Cir. 1995))).   Under these rapidly-evolving circumstances, and regardless of whether Ornder was merely attempting to evade arrest by hiding his identity or actively resisting arrest by failing to exit the vehicle, the Court finds it was objectively reasonable for Elkins to remove Ornder from the vehicle and knock him to the ground so he could prevent him from retrieving the gun on the floorboard and place him in handcuffs.

Arguably, it may have been less reasonable for Elkins and Boyd to use closed-fist punches and baton strikes to force Ornder to submit to the arrest after he was out of the vehicle and on the ground; at that point, the threat from the gun inside the vehicle was somewhat diminished. Likewise, when Elkins and Boyd were both straddling Ornder as he was face down on the ground, the added force of Long's knee in his back may have been unnecessary.  But it is undisputed that Elkins and Boyd both believed, based on their training, that Ornder may have a second gun.  And, allowing for the officers' on-scene, real-time assessment of the force necessary to effect Ornder's lawful arrest, the Court finds that these actions too were objectively reasonable.  *See, e.g.*, *Thomson*, 584 F.3d at 1315 ("[A] reasonable but mistaken belief that the suspect is likely to fight back justifies using more force than is actually needed."); *Estate of Larsen ex rel. Sturdivan v. Murr*, 511 F.3d 1255, 1260 (10th Cir. 2008) ("[I]n the end the inquiry is always whether, from the perspective of a reasonable officer on the scene, the totality of the circumstances justified the use

of force.").  As a result, Ornder fails to show that defendants' actions—up to the point Elkins and Boyd secured both of Ornder's hands in handcuffs—violated the Fourth Amendment.

Nonetheless, under Ornder's version of the facts, defendants' actions after Ornder was handcuffed were not objectively reasonable.  It is undisputed that Ornder eventually stopped resisting, that Elkins and Boyd were able to secure both of Ornder's hands in handcuffs, and that they found and removed a folded straight razor from Ornder's hand after they secured the second cuff.  Yet, according to Ornder, without further provocation from him, defendants "continued to beat [him] in the back of his head" and "stomp[]" him after he was handcuffed and while he remained face down on the ground with Long's knee in his back.  [Dkt. 66, Resp., at 2,5.]  These actions were not objectively reasonable because Ornder was effectively subdued at that point.  *See Perea*, 817 F.3d at 1203 ("Although use of some force against a resisting arrestee may be justified, continued and increased use of force against a subdued detainee is not.").  And, while it is undisputed that defendants later found that Ornder, in fact, had a second gun in the vehicle, a third gun in his back pocket and a folded straight razor in his hand, defendants' post-use-of-force discovery of these weapons is not relevant to the qualified-immunity analysis.  *See Hernandez*, 137 S. Ct. at 2007 ("Facts an officer learns after the incident ends—whether those facts would support granting immunity or denying it—are not relevant."); *Harris*, 735 F.3d at 1191 (noting that the reasonableness of an officer's use of force to effect an arrest must be based on facts that were known to the officer at the time of the force was used); *Dixon v. Richer*, 922 F.2d 1456, 1463 (10th Cir. 1991) ("While it is reasonable to frisk a detainee suspected of carrying a weapon . . . it is not reasonable to hit him in the stomach with a flashlight, or choke and beat him, solely on the basis of that suspicion.").

Even if Ornder was actively resisting arrest[7] and posed a significant threat to the officers before they secured him in handcuffs, a reasonable officer would have recognized that the threat had been neutralized once Ornder was handcuffed, relieved of the folded straight razor in his hand, and no longer within reach of the only gun Elkins and Boyd knew that he had, namely, the gun on the passenger-side floorboard of the vehicle. *See McCoy*, 887 F.3d at 1050 n.19 ("[F]orce justified at the beginning of an encounter is not justified *even seconds later* if the justification for the initial force has been eliminated." (alteration and emphasis in original) (quoting *Waterman v. Batton*, 393 F.3d 471, 481 (4th Cir. 2005))).

In short, on the record presented, a rational jury could find that Elkins and Boyd continued hitting Ornder in the back of the head and Long continued pinning him to the ground while Ornder was (1) face down, (2) closely surrounded by at least three officers, (3) no longer resisting, (4) secured in handcuffs, (5) no longer within reach of the gun that Elkins saw in the vehicle and (6)

---

[7] Defendants appear to invoke the doctrine of issue preclusion on this point, arguing that it is undisputed that Ornder was resisting arrest. Dkt. 65, Mot. for Summ. J., at 16 ¶ 35, 20. Specifically, they cite the Oklahoma Court of Criminal Appeals' decision affirming the judgment and sentence entered against Ornder in Washington County District Court, Case No. CF-2016-346 (Dkt. 65-10). In that case, the State charged Ornder with two counts of felonious possession of a firearm and one count of falsely impersonating another to create liability. Dkt. 65-10, at 2. But Ornder was not charged with resisting arrest. As to the charge of false impersonation, the trial court instructed the jury on the lesser included offense of obstructing justice, but the jury convicted him of the greater offense. Dkt. 65-9, at 84, 104. In affirming Ornder's judgment and sentence, the OCCA found defendants sentences "appropriate" given "his violent resistance to the officers in this case while he was in possession of two loaded firearms." Dkt. 65-10, at 6-7. But the OCCA made this statement when it rejected Ornder's claim that his sentence was excessive. Given that Ornder was neither charged with nor convicted of resisting arrest and given that the OCCA made this reference in addressing his sentencing challenge, not any specific conviction, it does not appear that defendants can rely on issue preclusion to support their assertion that Ornder's active resistance is undisputed. *See Salazar v. City of Oklahoma City*, 976 P.2d 1056, 1060 (Okla. 1999) (noting that "[t]he party relying on the defense of issue preclusion bears the burden of establishing that the issue to be precluded was actually litigated and determined in the prior action between the parties or their privies, and that its resolution was essential to a decision in that action").

no longer holding a folded straight razor in his hand.  A rational jury could therefore conclude that an objectively reasonable officer with knowledge of the facts known to defendants would not have perceived an immediate threat or the need to use additional force against Ornder to effect his arrest after he was secured in handcuffs, he had ceased resisting and, to defendants' knowledge, he was unarmed.

Based on the foregoing analysis, the Court finds that Ornder has met his burden to establish a Fourth Amendment violation.

### 2.    Clearly established law

Defendants argue that even if they used excessive force to effect Ornder's arrest, and thus violated the Fourth Amendment, they did not violate clearly established law.  Dkt. 65, Mot. for Summ. J., at 24-26.

As just discussed, adopting Ornder's version of the facts, Elkins and Boyd hit Ornder in the back of the head and Long continued pressing his knee into Ornder's back after Ornder ceased resisting, was secured in handcuffs, was unarmed and was lying face down on the ground. Contrary to defendants' argument, when they arrested Ornder in August 2016, it was clearly established that the use of force against an arrestee who is face down on the ground, in handcuffs, and no longer resisting arrest constitutes excessive force.  *See McCoy*, 887 F.3d at 1045-47, 1052-53.  In *McCoy*, the U.S. Court of Appeals for the Tenth Circuit concluded that three Tenth Circuit cases, decided in 1991, 2007 and 2008, "made it clear to any reasonable officer" by 2011 "that the use of force on effectively subdued individuals violates the Fourth Amendment."  887 F.3d at 1052.  The Tenth Circuit further concluded that, "[i]n light of those cases, it should have been obvious [to the officers in that case] that continuing to use force on [the arrestee] after he was rendered unconscious, handcuffed, and zip-tied was excessive."  *Id.*

17

In *Weigel v. Broad*, 544 F.3d 1143, 1155 (10th Cir. 2008), one of the cases relied on as clearly established law in *McCoy*, the Tenth Circuit held in 2008 that "the law was clearly established that applying pressure to [an arrestee's] upper back, once he was handcuffed and his legs restrained, was constitutionally unreasonable due to the significant risk of positional asphyxiation associated with such actions."  As added support for its conclusion that the officers in *Weigel* had fair notice that their particular conduct was excessive, the Tenth Circuit gathered cases from other circuits demonstrating that in 2008 it was "clearly established that putting substantial or significant pressure on a suspect's back while that suspect is in a face-down prone position after being subdued and/or incapacitated constitutes excessive force." *Id.* at 1155.  Unlike the officers in *Weigel*, defendants did not employ the "hog-tying" technique that resulted in the death of the arrestee in that case. *Weigel*, 544 F.3d at 1154.  But *Weigel* nevertheless would have provided fair notice to defendants that Long's continued pressure on Ornder's back, after Ornder was handcuffed and his legs and torso were restrained by the weight of two other officers—Elkins and Boyd—straddling him, could violate the Fourth Amendment.

More recently, the Tenth Circuit concluded that officers who, in November 2014, "continued beating [the arrestee] after it would have been clear to a reasonable officer that he had been effectively subdued" violated clearly established law. *Kalbaugh v. Jones*, 807 F. App'x 826, 827, 830 (10th Cir. 2020) (unpublished).  The pertinent facts in *Kalbaugh* are not markedly different from the facts in this case.  There, the arrestee was a passenger in a moving car when an officer attempted to initiate a traffic stop. *Kalbaugh*, 807 F. App'x at 827.  After the driver jumped out of the moving car, the arrestee began driving and led officers on a high-speed chase in heavy traffic. *Id.*  Eventually, the arrestee tried crashing through a fence to escape, stalled the car, got out of the car, dropped three handguns and put his hands in the air, as if to surrender, then fled on

foot. *Id.* at 827-29.  A bystander "put him on the ground" until two officers arrived and handcuffed

him. *Id.* at 828.  When the arrestee later sued the officers for using excessive force, he alleged that

"even though he was not resisting or struggling" as the officers handcuffed him, the officers

"punched him repeatedly." *Id.* at 829.  And though the arrestee admitted he had a knife in his

pocket during the use of force, he denied that he ever reached for it. *Id.*  The Tenth Circuit found

that "[t]aking the facts in the light most favorable to [the arrestee], a reasonable jury could conclude

that [the officers] continued to beat [him] after he was effectively subdued" and no longer posed

an immediate threat to the officers. *Id.* at 830.  The Tenth Circuit further concluded that the officers

in that case "violated clearly established law if they continued beating [the arrestee] after it would

have been clear to a reasonable officer that he had been effectively subdued." *Id.*

Based on *Weigel*, *McCoy* and *Kalbaugh*, the Court finds that defendants had fair notice in

2016 that their alleged conduct in continuing to apply pressure to Ornder's back and in continuing

to hit and stomp Ornder after he was handcuffed, unarmed, face down on the ground, and no longer

resisting arrest violated clearly established law.[8]

---

[8] The Court acknowledges that the decisions in *McCoy* and *Kalbaugh* post-date Ornder's arrest and, further, that *Kalbaugh* is an unpublished decision.  Ordinarily, these decisions would thus not be considered as "clearly established law."  *See Estate of Smart by Smart v. City of Wichita*, 951 F.3d 1161, 1176 n.14 (10th Cir. 2020) (noting that two cases that post-dated the excessive-force incident at issue, "standing alone, could not have given the officers notice that their conduct violated clearly established law"); *Knopf v. Williams*, 884 F.3d 939, 947 (10th Cir. 2018) (noting that "unpublished decisions 'provide little support for the notion that the law is clearly established'" (quoting *Mecham v. Frazier*, 500 F.3d 1200, 1206 (10th Cir. 2007))).  But the Tenth Circuit in *Estate of Smart by Smart* nevertheless found two cases that post-dated the excessive-force incident in that case were instructive because both "dealt with" events that occurred before the incident and both "cit[ed] case law pre-dating" the incident in determining "that it violated clearly established law to use force against a suspect who has ceased to be a threat." 951 F.3d at 1176 n.14.  Here, the Court likewise finds *McCoy* and *Kalbaugh* instructive because both relied on published Tenth Circuit cases that pre-dated Ornder's arrest.

### 3.    Conclusion

Because Ornder has met his initial burden to establish defendants violated his clearly established Fourth Amendment right to be free from an unreasonable seizure, the Court concludes defendants are not entitled to qualified immunity.  Further, because the record demonstrates a genuine dispute as to whether defendants used force against Ornder only while he was actively resisting arrest or whether they continued to beat him after he was effectively subdued and no longer posed a threat to their safety, the Court concludes defendants are not entitled to judgment as a matter of law as to the excessive-force claim.

### B.    "Theft" claim

In count three, Ornder alleges that after defendants used excessive force against him they took from him $4,850 in cash and two casino vouchers "by means of theft."  Dkt. 44, Am. Compl., at 4.  He refers to both the Eighth and Fourteenth Amendment in count three, but it is not clear whether he claims the purported "theft" of his property or the preceding use of excessive force violated his constitutional rights.  *Id.*

Citing Fed. R. Civ. P. 12(b)(6), defendants seek dismissal of the claim asserted against them in count three, arguing the facts alleged are not sufficient to state a plausible claim for "theft" under § 1983.  Dkt. 65, Mot. for Summ. J., at 26-28.  In his response, plaintiff further states that this property was in a money pouch that defendants removed from his pocket and that the "theft"

20

of this property "is documented in the original record (O.R.) of the criminal charges filed against [Ornder] which resulted from this action.  Dkt. 66, Resp., at 5. [9]

The Court agrees with defendants that the facts Ornder alleges to support his count three claim, even accepted as true, do not support a plausible claim for relief under § 1983.  To state a plausible claim for relief under § 1983, a plaintiff must allege facts demonstrating that a person acting under color of state law deprived the plaintiff of a federally protected right.  *Schaffer v. Salt Lake City Corp.*, 814 F.3d 1151, 1155 (10th Cir. 2016).  To the extent plaintiff alleges he was deprived of his Fourteenth Amendment right to due process when defendants removed a money bag from his pocket incident to his arrest, he fails to state a claim on which relief may be granted.  "The fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner."  *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976).  But the Fourteenth Amendment's due process requirement is satisfied if the state provides an adequate post-deprivation remedy.  *Durre v. Dempsey*, 869 F.2d 543, 548 (10th Cir. 1989) (citing *Hudson v. Palmer*, 468 U.S. 517, 533 (1984)).  Consequently, "to state a claim under § 1983" for the deprivation of personal property without due process, "a complaint must allege facts sufficient to show . . . the lack of an adequate state remedy."  *Id.*  Because Ornder merely alleges defendants

---

[9] In screening the amended complaint, the Court determined that the facts alleged in count three, if true, could state a plausible claim for conversion under state law.  Dkt. 48, Op. & Order, at 7.  "Under Oklahoma law, '[c]onversion is any act of dominion wrongfully exerted over another's personal property in denial of or inconsistent with his rights therein.'"  *Courtney v. Okla. ex rel. Dep't of Public Safety*, 722 F.3d 1216, 1228 (10th Cir. 2013) (alteration in original) (quoting *Welty v Martinaire of Okla., Inc.*, 867 P.2d 1273, 1275 (Okla. 1994)).  In seeking dismissal of the claim asserted against them in count three, defendants did not address whether the facts alleged support a plausible state-law claim for conversion.  Dkt. 65, Mot. for Summ. J. at 26-28.  And, in Ornder's response, he appears to clarify that he is asserting a constitutional claim in count three for the "unreasonable seizure of . . . property."  Dkt. 67, Resp., at 6-7.  Accordingly, the Court confines its analysis to whether Ornder states a plausible due-process claim in count three of the amended complaint.

took personal property from him, he fails to state a plausible Fourteenth Amendment claim. Thus, to the extent Ornder alleges a due-process claim in count three of the amended complaint, the Court grants defendants' motion to dismiss that claim, under Fed. R. Civ. P. 12(b)(6), for failure to state a claim on which relief may be granted.

## *CONCLUSION*

Based on the foregoing analysis, the Court concludes that defendants are not entitled to qualified immunity on the excessive-force claim asserted against them in count one of the amended complaint and that genuine disputes over material facts preclude summary judgment on that claim. The Court further concludes that defendants' request for summary judgment as to the deliberate-indifference claim asserted against them in count two of the amended complaint is moot, given that this Court previously dismissed that claim. Finally, the Court concludes that the facts alleged in count three of the amended complaint fail to state a plausible claim for relief under § 1983. For these reasons, the Court denies defendants' motion for summary judgment as to the claims asserted in counts one and two, and grants defendants' motion to dismiss the claim asserted in count three.

**ACCORDINGLY, IT IS HEREBY ORDERED** that:

1. Defendant's motion for summary judgment (Dkt. 65) is **denied**, in part, as to the excessive-force claim asserted in count one of the amended complaint.

2. Defendants' motion for summary judgment (Dkt. 65) is **denied as moot**, in part, as to the deliberate-indifference claim asserted in count two of the amended complaint.

3. Defendant's motion to dismiss (Dkt. 65) is **granted** as to the "theft" claim asserted in count three of the amended complaint.

4. The amended complaint (Dkt. 44) is **dismissed without prejudice**, in part, as to count three.

5. Ornder may proceed on the excessive-force claim asserted in count one of the amended complaint.

6. A scheduling order setting a trial date and establishing other relevant deadlines shall be entered forthwith.

**DATED** this 21st day of September 2020.

GREGORY K. FRIZZELL
UNITED STATES DISTRICT JUDGE